Good morning, your honors. May it please the court, I am Jamie Ferrara, the representative for Loretta Welch. Many issues were raised in this case, however, the one that I think is most important for oral argument would be the Miranda issue, and that's the one that I'm prepared to argue this morning. The most important issue in the Miranda issue is whether or not Loretta Welch was in custody at the time of her interrogation at her home during the search warrant on April 13, 1999. My contention is that she was, in fact, in custody, and that your findings in the Kim case warrant a reversal and remand of this case. The facts of this case are very strong in favor of Mrs. Welch. When she was told that agents were coming to her house, she was originally told that the agents were coming to check some records regarding gun transactions, something that they had done in the past. They did not mention that they were coming to question her or that they were going to execute a search warrant. When they arrived, however, they said, we are here to execute a search warrant, and they said that there were a group of agents down the street who were prepared to clear the house. They entered the house with their weapons drawn. Mrs. Welch was standing outside basically with two agents as several other agents. It's anywhere from six to ten, I believe, entered the house with weapons drawn to clear the house. Counsel, in your view, at what point was Miranda triggered? I believe that Miranda was triggered the instant that Mrs. Welch was brought into the house and confined into the kitchen. And what were the circumstances under which she was brought into the house? Was she ordered into the house, invited into the house, or how did that come about? I believe at that time what happened was the agent said, we are going to search your home. You can leave, or if you stay, you have to stay in one confined area, and you may not move around the house freely. How does that differ from an interview in a police station, where someone is told that we're going to do the interview in the interrogation room, but you can leave whenever you want? Well, I think the facts differ in the sense that Mrs. Welch was in her own home. She was told she could not wander about the house freely, and I understand that Michigan v. Summers does say that you can detain somebody for the purposes of searching a house. To prevent the disruption of evidence. To prevent the disruption of evidence, and that is understandable. However, this went beyond Michigan v. Summers, and this court in Kim specifically stated that when you go beyond a Terry-type questioning, that they believe that Michigan v. Summers would then have warranted Miranda warnings at that time. Ms. Ferrara, isn't it a fact, though, that she had the option of leaving the house? She did have the option initially, and I believe that as the interrogation went on that she felt that she could not leave, and that any reasonable person in that position would have felt that they could not leave, and that they were subjected to these questions, a very full-fledged, strong interrogation that went on for over two hours. So the question then comes, was her feeling objectively reasonable? Yes. When they gave her these options, they said, you can leave, or if you choose to stay, because we are searching the entire house, we are asking you to stay in one place. Now, under those circumstances, how can you say that she was under total constraint in order to trigger Miranda? Well, Your Honor, I think that as the questioning went on, as it took two hours, as the agents took over her home and created a police state, essentially, in her home, she felt that she could not leave. A police station? A police state. I'm sorry. Oh, I see. The police took over her home when they were searching. What is a police state when a group of officers are searching for contraband? I'm not familiar with that expression. Well, it was probably in any... I just get a general idea of a police state where there's a political government under a dictatorship. Well, it was perhaps inartful, Your Honor. Oh, yes. What I was trying to state is, in Kim, they talked about a police-dominated atmosphere. That's what I was trying to go for, Your Honor. And in that, on April 13, 1999, I posit that that is what happened in Mrs. Welch's home. They did not tell her that she was, if you do say, we're going to question you and we're going to question you extensively for over two hours and we're not going to tell you that you can have an attorney present and we're not going to tell you that anything you use, you say. Counsel, I don't remember the case. I think it's Anderson, but I may be wrong. Isn't there a Supreme Court case right on point where internal revenue agents came to the suspect's home and interrogated him for a lengthy period of time in the house and the court held that Miranda was not required simply because the interview occurred in the house and even though he was a suspect of a tax investigation? Your Honor, I'm not sure. I'm not familiar with that case. However, I do think that this case is a lot like Kim, which your court just decided a little over a year ago. Well, Kim, they locked the door on her, right? So she wasn't free to leave. They did, but they told her she could leave. And they told her and the agents testified that they were positioned so that she could go at any time. However, the court said that a reasonable person would not have felt that they could leave and that this was a situation that was so dominated by the police. So is it a subjective test or an objective test? It is an objective test, your Honor. And I am arguing that Mrs. Welch as an objective person or any objective person in this situation would not have felt that they were free to leave their home during this interrogation. Counsel, in Kim, wasn't it a little different because the police slammed the door when the husband tried to go in and would not allow him to come in and also would not allow Mrs. Kim to call her husband, and she did not speak English well. Aren't those factors that are sufficiently different that that makes a different case? I think that they are different facts, but I don't think that they take away from the fact in this case that a reasonably objective person would not have felt free to leave. So is it a legal test or a factual test? Because obviously you've got adverse factual findings from the district court on the motion to suppress that we then I guess must find clearly erroneous in order to grant you the relief that you're seeking? I believe so, your Honor. You have a de novo review of the finding of in custody, but there is a clearly erroneous standard for the district court's factual findings. I don't think that the district court found necessarily that any of the facts that I'm arguing in my brief did not happen. What the court found was that Mrs. Welch would have felt free to leave. However, this was before this case made its decision in Kim, and I think that if Kim had been in front of the district court that she might have felt differently. There's a couple of cases. Let me make sure I understand your concession here. You are conceding the facts as the district court found them as a matter of fact, but arguing as a matter of law under Kim that that still constituted a custodial interrogation? Mostly. Where did I go wrong? Well, the facts that I put in the brief are essentially the same facts as the government put in the brief, and I don't think that I'm saying anything in my brief that the district court did not hear. So is that why you're not saying that you're not conceding the facts? It's the legal significance of the facts that we made? Correct. Correct. I think the district court perhaps did not place the emphasis on the facts that were most important in this analysis. Do you want to save some time for rebuttal? I would, Your Honor. Thank you. Thank you, Your Honor. May it please the Court, my name is Alana Wong. I am an assistant United States attorney in the Southern District of California. I represent the United States in this matter. Ms. Farrar has spent most of her time dealing with the Miranda issue, and I would like to do so as well. In United States v. Kim, this Court applied the same totality of the facts case standard that it has for a very long time. The only thing that was different in Kim and which resulted in adverse decision to the government were the facts. And, in fact, when you look at a determination of whether someone was in custody, it is a factual determination. And the facts in Kim were significantly different from the facts in Welch. Of primary significance is the factual finding made by the district court in the incident case that Welch was told she was free to leave. She said the district court found, and I quote, I accept Agent Power's testimony that he initially told her she could leave or stay. That's at the excerpt of records 98. The court also found that the agents were truthful in this testimony. That's a quote from the excerpt of the record at 129. By contrast, in Kim, the district court specifically found, discredited the agent's testimony and specifically found that Kim was not told she was free to leave. And in Kim's case, the court will recall the facts were that Kim, her son, and her husband all testified to the same facts, that she was not told that she was free to leave. Let's see what happened there. The son worked in the store. He was working there the morning that the search warrant was executed. Yes, Your Honor. And she called and he didn't answer the telephone. Yes. So she came down to the store. That's right. All right. Now, what happened after she entered the store? What happened, Your Honor, was first she tried to enter the store, of which she was a part owner, and it was locked. So she knocked on the door and she rattled the door. At that point, one of the police officers inside opened the door, allowed her entry, and then slammed the door, locking her husband out. This is a significant factor in the determination of whether she or a reasonable person would have felt that she was free to leave. Because at this point she was isolated from any person who could have given her support. And the husband was a co-owner as well. That's right. Yet he was locked out of his own store. Certainly a reasonable person in that circumstance would feel that not only were they not free to leave, but other people were not free to enter. That was not the case here. In this case, Welch was told that she was free to leave whenever she wanted. She elected to stay. It is true that she was confined to one area while the search took place, which is a standard law enforcement technique to control the situation which has been affirmed in the Supreme Court. And she was not isolated from anybody. She was told that she was free to make telephone calls. And, in fact, during the interview did telephone her husband. So certainly she did not suffer the same type of isolation that Kim did under the factual circumstances. Also of significance is the fact that Kim, as related in detail in the Kim decision, was not a native English speaker. She spoke Korean. She didn't feel comfortable in English. Her son had informed the agents of this when she got there. In contrast, Welch had no problem speaking English. She's a native English speaker. And as the court pointed out, she's a mature woman who ran a gun store for almost a decade and was familiar with the ATF. She was familiar because she had to interact on a regular basis with ATF investigators who would come to inspect for acquisition and disposition books. And of all significance that in Kim they told her that the store there, that the police suspected that pseudo, what is that? Pseudo-effedron? I really am not familiar with that. It had been sold at that store. And from that, the police said that you should have known that there was a criminal investigation involving this store. Now, was that present in the present case at Barr? Yes, it was, because in the Kim case, the court noted that Mrs. Kim had been told you can't sell pseudo-effedron, which is a precursor chemical in the manufacture of methamphetamine, and that as a ñ Was that an artificial speed, artificial amphetamine? What, pseudo-effedron? Yes. No. In and of itself, it is not speed or doesn't have the effect of speed. It's just a precursor chemical. It's something that is used in conjunction with other chemicals to create methamphetamine. That's just for my edification. It's also something that's used to treat cold symptoms. So, but getting back to your point, one of the facts in the totality of the circumstances test that we're all familiar with is whether or not ñ whether and to the extent that the person was confronted by the agents. Now, in the Kim case, one might say that because she was already warned that it would be against the law to sell pseudo-effedron, and now they were back to serve a search warrant, that somehow she was being confronted with that fact. In this case, we have something similar, but that in and of itself doesn't dictate a conclusion that the district court was clearly erroneous in finding that she was in custody. In this case, what we have are the ATF agents informing Ms. Welch that they are trying to figure out what happened in a particular gun transaction that involved 80 assault rifles that were found by law enforcement there. She ñ but this was not the first time that she had been questioned by the ATF regarding these facts. In the year before, an ATF investigator had come to her store, which was still in business at that time, and asked her the same questions. What are you ñ you know, how did these guns end up in Mexico? To whom did you sell them? May we see your acquisition and disposition records? But the record is also clear that in this case, Ms. Welch felt that she was not the target of the investigation. Counsel, does it make a difference in this case that the questioning was done at Mrs. Welch's home as opposed to her place of business? I believe it does, to the extent that her home is a familiar environment, which goes to the issue of whether she felt that she was free to leave, whether she was coerced. Well, what's your best case authority for the proposition that interrogation in a home is less menacing? What's your best case authority for that proposition? In Michigan v. Summer, the case ñ the facts were similar. That in that case, it was a ñ it was an interrogation that occurred in a home. That case was different from this, though, in that in that case, the defendant was actually detained. Government contends in this case that she was not detained. In addition to that case, there are ñ What language in that case supports your premise that an interrogation in a home is less threatening? In the Michigan case? Yes. Well, I'm afraid I can't give you a specific page site, but the fact that you're in your home is someplace where you feel comfortable as opposed to someplace where you would feel isolated and out of control. So I think it is an important factor that she was in her home. And there are other Ninth Circuit cases that indicate that that is one factor that should be considered in the issue of whether she was in custody. But it's not dispositive in and of itself. You can be in custody in your home if certain other factors are present. Those factors are not present in this case. In this case, she was verbally told, informed that she was free to leave. Her ingress and her egress was not blocked. She was not cut off from other people. They never ñ the agents did not use any coercive or intimidating language, which is in stark contrast to Kim, in which the testimony accepted by the district court was that she was told to shut up, that she was instructed not to speak in Korean to her son. Those factors are not present in this case. If I understand your friend, Ms. Ferrara, I think she is emphasizing, sure, she was permitted to leave in the first instance. But afterwards, afterwards, it became that she was not only restricted to the kitchen, but she could have, in her own mind, felt that she was totally restricted. Did you sense that was her major point? Yes. Well, I sense that that was a point that Ms. Ferrara made, and I made a mental note of it because there's absolutely no proof in the record, there's no support in the record at all that any point Ms. ñ a reasonable person would have felt not free to leave once they were seated at the kitchen table. To the contrary, the record is clear that Ms. Welch never asked to leave, that she never tried to leave. She never expressed a desire to leave at any point, and that's at the excerpt of records of 64. So while Ms. Ferrara may speculate as to what was in Ms. Welch's mind at the time that she was seated at the kitchen table, one, there is no ñ there is no support in the record, and two, an analysis of her subjective belief is not the issue before the Court. It's what would an objective person, what would a reasonable, innocent person have felt under the circumstances. Ms. Welch, I have one factual question. As I understand it, at the time of the search, the business had been closed. That's right. So the reason they had to do it at her home was that's where the records were that had been at the business before. The Court understands the facts correctly. Thank you very much, Natalie. Thank you. Just a couple of brief points I'd like to bring up to Your Honors. While Mrs. Welch was in her kitchen being questioned by the agents, one ATF agent told her that she could be indicted for this, that he didn't believe her story. He accused her of trying to protect her son, who was also a suspect in this case, and he told her that it would cost a lot of money for her to defend herself in this case. And I think those are very important in terms of whether or not or when it changed into the fact that she felt she couldn't leave. She was isolated. The only person allowed to enter the home was her husband, and he was coming just to open up a gun safe that the agents wanted to inspect. There was psychological coercion that happened in that kitchen. There was no evidence in the Kim case that Mrs. Kim asked to leave either, and so Ms. Wong makes much of the fact that Mrs. Welch did not ask to leave. I don't think that occurred in the Kim case either. Mrs. Welch did know there was a criminal investigation going on. She had been questioned extensively the year before, and there had been several record checks of the records for this now-defunct business during that year. So she did know she was under investigation, and she knew that there was a criminal investigation, and there was quite a bit in the press in San Diego about where these guns were found and what they had been suspected of being used for. But you're not arguing that we've returned to the old days of focus of the investigation and suspect in that? No. I mean, it seems to me the Supreme Court has done away with that old test. No, Your Honor, but I do think that a reasonable, objective person would think that being confronted with all these threats of indictment and criminal investigation and criminal charges would make that reasonable person feel that they were under suspicion and could not leave. Thank you. Thank you. The case just argued is submitted. It's very well argued, counsel. I appreciate your argument.
judges: Aldisert , Tallman, Rawlinson